Case No. 17-1150

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | |
|---|---|
| BRIAN J. STONE and ELLEN A. STONE,  )<br><br>Plaintiffs-Appellants,  )<br><br>-against-  )<br><br>TODD A. MARTIN and JASON DUNLAP,  )<br><br>Defendants-Appellees.  ) | Appeal from the<br>U.S. District Court<br>Middle District of<br>Pennsylvania<br>District Case No.<br>3-15-cv-01632 |

## BRIEF ON BEHALF OF PLAINTIFFS-APPELLANTS

Brian J. Stone
Plaintiff *Pro Se*
PA Attorney ID No. 313341
21509 Island Club Road
Tilghman, MD 21671
Phone: 570-517-9097
Email: brian@brianstonelaw.com

# TABLE OF CONTENTS

Table of Contents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Jurisdictional Statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Issues Presented for Review  . . . . . . . . . . . . . . . . . . . . .  2

Statement of Related Cases  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Concise Statement of the Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Standards for Summary Judgment and Review on Appeal  . . . . . . . . . . . .  5

Summary of the Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Argument

Point I - An Historical Perspective of the Right of Privacy  . . . . . . . . . .  7

Point II - The Seizure and the Search  . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Point III - Defendants Violated Plaintiffs' Fourth Amendment Rights . .  14

Point IV - Defendants Do Not Have Qualified Immunity  . . . . . . . . . . .  20

Point V - Sheriff Martin is Sued Based Upon the Policies of His Office .  22

Point VI - Pennsylvania Constitutional Claims  . . . . . . . . . . . . . . . . . . .  23

Point VII – Plaintiffs' State Claims Are Not Barred  . . . . . . . . . . . . . . . .  26

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Certificate of Compliance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

# TABLE OF AUTHORITIES

## Cases:

*Burkholder v. Superior Court*, 86 Cal. App.3d 421, 158 Cal. Rptr. 86 (1979) . . 15

*Bolden v. Southeastern Pa. Transp. Auth.,* 953 F.2d 807, 822 (3rd Cir., 1991) . . 17

*California v. Acevedo,* 500 U.S. 565 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) . . . . . . . . . . . . . . . . . . . . . . 5

*Coffman v. Wilson Police Department*, 739 F. Supp. 257 (E.D. Pa., 1990) . . . . 26

*Commonwealth v. De John*, 486 Pa. 32, 403 A.2d 1283 (1979) . . . . . . . . . . . . . 24

*Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) . . . . . . . . . . . . 24

*Commonwealth v. Gindlesperger*, 560 Pa. 222, 743 A.2d 898 (1999) . . . . . . . 24

*Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996) . . . . . . . . . . . . . . 24

*Coolidge v. New Hampshire,* 403 U.S. 443, 455 (1971) . . . . . . . . . . . . . . . . . . 10

*Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992) . 6

*Florida v. Jardines,* 569 U.S. 1 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hester v. United States,* 265 U.S. 57 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jones v. City of Philadelphia*, 890 A.2d 1188 (2006) . . . . . . . . . . . . . . . . . 23, 25

*Katz v. United States,* 389 U.S. 347 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*McAulay v. County of Washington,* 2014 WL 4058962 (D.Or.,
Aug. 15, 2014), aff'd, 666 Fed. Appx. 695 (9th Cir., 2016) . . . . . . . . . . . . . 13, 14

*McCarthy v. County of Kootenai,* 2009 WL 3823106 (D. Idaho, Nov. 12, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . 23

*Oliver v. United States,* 466 U.S. 170 (1984) . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Olmstead v. United States*, 277 U.S. 438 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Payton v. New York*, 445 U.S. 573 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pearson v. Callahan*, 555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Scott*, 79 N.Y.2d 474, 583 N.Y.S.2d 920 (1990) . . . . . . . . . . . . . . . 16

*Petruzzi's IGA Supermarkets v. Darling-Delaware Co.,* 998 F.2d 1224, 1230 (3d Cir., 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Robinson v. State*, 164 So.3d 742 (Fla.2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Royal v. Durison*, 319 F. Supp. 2d 534 (E.D. Pa., 2004) . . . . . . . . . . . . . . . . . . 5

*Saucier v. Katz,* 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Semayne v. Gresham*, 5 Co. Rep. 91a, 11 E. R. C. 629, 77 Eng. Repr. 194 (1603) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State v. Bryant,* 183 Vt. 355, 950 A.2d 467 (2008) . . . . . . . . . . . . . . . . . . . . . . 15

*State v. Brinks,* 87 Wash. App. 1021, 1997 WL 469864 (Wash. Ct. App, Aug. 18, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State v. Christensen*, 131 Idaho 143, 953 P.2d 583 (1998) . . . . . . . . . . . . . . . . 15

*Toledo Mack Sales & Serv. V. Mack Trucks, Inc.,* 530 F.3d 204 (3d Cir., 2008) . 6

*United States v. Chadwick,* 433 U.S. 1 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Depew,* 8 F.3d 1424 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Dunn*, 480 U.S. 294 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Jacobsen,* 466 U.S. 109, 113 (1984) . . . . . . . . . . . . . . . . . . . . 12

*United States v. Jones,* 565 U.S. 400 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Lefkowitz*, 285 U.S. 452, 467 (1932) . . . . . . . . . . . . . . . . . . . . 10

*United States v. Orlander,* 584 F.2d 876, 888 (9th Cir., 1978) . . . . . . . . . . . . 11

## Statutes:

34 Pa. C. S. § 901(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 Pa. C. S. §8541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

42 Pa. C. S. §8542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

42 Pa. C. S. §8545 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

42 Pa. C. S. §8550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

Fed. R. Civ. P. §12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## Other Authorities:

1 Blackstone, Commentaries on the Laws of England 129, 134 . . . . . . . . . . . . 8

Collins English Dictionary – Complete and Unabridged, 12th Ed., 2014 ...... 13

http://www.websters-online-dictionary.org ............................. 13

McKeldey's Roman Law (Dropsie), §123 ............................ 8

Ninth Circuit Rule 36-3 ........................................... 14

Nimmer, "The Right of Publicity", Law and Contemporary Problems, 203 ... 8

Pennsylvania Constitution, Article I, § 8 ........................ 1, 23-25

Pennsylvania Constitution, Article I, § 11 ........................... 25

UN Declaration of Human Rights, Article 12 ........................ 8

Warren and Brandeis, "The Right of Privacy", 4 Harvard L.R. 193 .......... 8

Webster's Third New International Dictionary (1986) ................... 12

## Jurisdictional Statement

The complaint alleges that defendant Dunlap, while acting under the color of his authority as a deputy sheriff, and in the course of that employment, and in conformity with the policy of defendant Martin, the sheriff, unlawfully and without due process, conducted an arbitrary intrusion upon the plaintiffs' property, deprived the plaintiffs of their peace and quiet, invaded the plaintiffs' privacy and solitude, and diminished the plaintiffs' enjoyment of life. The first cause of action alleges that as a result of the deprivations caused by the defendants, plaintiffs are entitled to relief under the Civil Rights Act, 42 U.S.C. §1983, and that the District Court had subject matter jurisdiction under 28 U.S.C. §1343. The fifth cause of action seeks injunctive relief to stop defendants from repeating their unlawful violation of the rights of the plaintiffs.

The second, third and fourth causes of action, alleging violations of Article I, § 8 of the Pennsylvania Constitution, the common law right of privacy, and the trespass laws of Pennsylvania, respectively, arose from the same incident that gave rise to the first cause of action. Hence, the District Court had pendent jurisdiction over the state claims. 28 U.S.C. §1367.

This Court has jurisdiction of appeals from final decisions of the United States District Court for the Middle District of Pennsylvania, except where a direct review may be had in the Supreme Court. 28 U.S.C. §1291. On December 22,

1

2016, the District Court issued a memorandum decision that granted the defendants' motion for summary judgment and an order granting defendants' motion with respect to the Fourth Amendment claim, dismissing the state claims without prejudice, and directing the Clerk of the Court to close the case. Hence, the appeal is from a final order that disposes of all parties' claims. On January 17, 2017, the plaintiffs filed the instant appeal.

## Statement of the Issues Presented for Review

The issues presented in this appeal center on seizure, search and privacy. The defendants assert, without any authority, that a deputy sheriff may invade private property in an attempt to locate a party in a civil suit and to serve process on that person. Whether the unauthorized and unlawful entry made by a sheriff's deputy diminished the plaintiffs' exclusive right of possession is an issue that is presented for this Court's review.

When a deputy disregarded numerous posted signs, circumvented a closed and locked gate, and walked through dense woodlands that acted as a natural barrier in shielding from view the plaintiffs' home and most of their property, it raises the issue of whether such conduct constituted an unconstitutional search. Moreover, this Court may need to decide if such conduct violate the plaintiffs' constitutional rights when that deputy crossed the grass courtyard that constituted

the home's curtilage.

This appeal addresses whether the right of privacy that has been favored throughout history and was the foundation for many of the safeguards found in the Bill of Rights, is still to be protected and preserved.

Although the District Court did not rule on the alternative bases for the defendants' motion for summary judgment, since this Court will review a summary judgment motion *de novo* (see below), it is expected that defense counsel will assert the defenses of qualified immunity, *respondeat superior*, that there is no remedy for violation of the Pennsylvania Constitution, and that the Political Subdivision Tort Claims Act is a bar to the state claims.

The issues presented for review were raised in the briefs in support of the summary judgment motion and in opposition to it. Since they were in the briefs, there is no reference to them in the appendix.

## Statement of Related Cases

This case has not been before this Court previously, and there is no other case that is in any way related to it, except that it is anticipated that these plaintiffs will soon commence an action in the Pennsylvania Court of Common Pleas with respect to the state claims that were dismissed without prejudice.

## Concise Statement of the Case

In an effort to serve a Rhode Island small claims notice upon plaintiff Ellen Stone, defendant Dunlap, a Monroe County Deputy Sheriff, went to the home and property of the plaintiffs. Deputy Dunlap disregarded no trespassing and other posted signs, circumvented a closed and locked gate, walked 0.3 miles along a curvy driveway through dense woods that acted as a natural barrier or wall so that the plaintiffs' home and the vast majority of their approximately 75 acres of surrounding property could not be seen from the roadway or boundary lines. A19-21.[1] Deputy Dunlap finally reached and entered the curtilage of the plaintiffs' home and he walked towards the house. A27. As he got closer to the home, he saw a person near the garage and said that he was looking for Ellen Stone. A16.

The plaintiffs' written request of Sheriff Martin to take steps to avoid a repetition of the unlawful entry by a deputy resulted in a response that deputies can ignore posted signs and locked gates to serve civil process. A27. No uninvited person has ever entered upon the plaintiffs' property when the gate was closed and locked other than Deputy Dunlap, and on one occasion, a drunken neighbor. A28.

On October 23, 2015, the defendants filed a motion to dismiss pursuant to

---

[1] Numbers preceded by an "A" are references to corresponding pages of the Appendix.

4

Fed. R. Civ. P. §12(b)(6). Opposition to that motion was submitted on November 6, 2015, and a reply brief was filed on November 10, 2015. On August 17, 2016, the District Court found that this motion was superseded by the defendants' June 30, 2016, summary judgment motion which made the same arguments, but was accompanied by supporting exhibits. As noted in the Jurisdictional Statement, above, the District Court granted the defendants' summary judgment motion on December 22, 2016, which is the subject of this appeal.

## Standards for Summary Judgment and Review on Appeal

Summary judgment is appropriate only where there is no genuine issue as to a material fact and that a movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To be successful on a summary judgment motion, the movant is required to identify those portions of the pleadings and discovery material that demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether there exist genuine issues of material fact, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Royal v. Durison*, 319 F. Supp. 2d 534 (E.D. Pa., 2004), affirmed 254 Fed. Appx. 163 (3d Cir., 2007).

This Court's review of an order granting summary judgment is *de novo,* and hence, the same standard applies as in the District Court. *Petruzzi's IGA*

*Supermarkets v. Darling-Delaware Co.,* 998 F.2d 1224, 1230 (3d Cir., 1993). Therefore, this Court should view all of the evidence in the light most favorable to the non-moving plaintiffs and draw all reasonable inferences in favor of the plaintiffs. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992); *Toledo Mack Sales & Serv. V. Mack Trucks, Inc.,* 530 F.3d 204, 209 (3d Cir., 2008).

## Summary of the Argument

The right of privacy, said to be a natural law, was recognized in ancient societies as well as by the common law. It is the foundation for the Fourth Amendment and for much of the Bill of Rights. The Fourth Amendment was designed to protect this fundamental right as well as to prohibit general warrants.

When the deputy unlawfully entered the plaintiffs' private property and walked to their home, he removed their right of exclusive possession, and thereby made a seizure. In looking for one plaintiff on her gated, shielded, private property, the deputy conducted a search that deprived the plaintiffs of their reasonable expectation of privacy. Moreover, when the deputy entered the front courtyard to the plaintiff's home, its curtilage, he destroyed the respect that is due to the sanctity of the plaintiffs' home.

Since the constitutional and state rights that were violated were clearly established, there is no qualified immunity for that violation. Likewise, the Pennsylvania Political Subdivision Tort Claims Act does not protect the defendants from their intentional act.

The Sheriff, who established or permitted the unlawful policy and practice that led to the violation of the plaintiffs' privacy rights, is properly named as a defendant. He is not named under the doctrine of *respondeat superior*, which is not permitted in a §1983 action. The Sheriff and Deputy are also liable for having violated the plaintiffs' rights under the Pennsylvania Constitution.

## ARGUMENT

## I.    An Historical Perspective of the Right of Privacy

The tenet that the people should be protected from unreasonable searches and seizures long pre-dated the adoption of the Fourth Amendment. More than 400 years ago, Sir Edward Coke stated that "The house of every one is to him as his castle and fortress, as well as for his defence against injury and violence as for his repose." *Semayne v. Gresham* (usually referred to as Semayne's Case), 5 Co. Rep. 91a, 11 E. R. C. 629, 77 Eng. Repr. 194 (1603). Over the centuries this statement has been rephrased as "every man's home is his castle." A century and

a half later, Sir William Blackstone's Commentaries on the Laws of England noted three individual rights: the right of personal security, the right of personal liberty, and the right of private property. 1 Bl. 129, 134. These rights are said to be derived from natural law, and have been recognized by many ancient cultures. *E.g.,* McKeldey's Roman Law (Dropsie), §123. International treaties recognize a right of privacy. Indeed, Article 12 of the UN Declaration of Human Rights, adopted without a single dissenting vote, has long provided that "No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence . . . ."

Despite the historic importance placed upon privacy, the first American publication that advocated a privacy right appeared in a law review article written by Samuel D. Warren and Louis D. Brandeis entitled "The Right of Privacy" (4 Harvard L.R. 193 [1890]). Warren and Brandeis' article has been referred to as perhaps the most famous and certainly the most influential law review article ever written. Melville B. Nimmer, 1954, "The Right of Publicity", Law and Contemporary Problems, p. 203. Warren and Brandeis described the right of privacy as the right to be let alone. Thirty-eight years after their law review article was published, in an exhaustive dissenting opinion, Justice Brandeis stated the following:

> "The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of

8

man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone - - the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the Government upon the privacy of the individual, whatever means employed, must be deemed a violation of the Fourth Amendment." *Olmstead v. United States*, 277 U.S. 438, 478. (1928).[2]

The right of privacy is the foundation for the freedom of conscience that is protected by the First Amendment, the limitation of quartering found in the Third Amendment, the protection against self-incrimination set forth in the Fifth Amendment, and certainly the right to be secure that is specified in the Fourth Amendment. It is respectfully submitted that an appreciation of the enormous importance of the right of privacy, the right to be let alone, gives insight to the purpose and full meaning of the Fourth Amendment.

When James Madison, the "Father of the Constitution," drafted the Fourth Amendment in 1789, he did not simply follow the Virginia Declaration of Rights, even though he had been a delegate to the Virginia ratifying convention. Although Madison saw the evil of general warrants that were plainly addressed in the Virginia Declaration of Rights, he modeled his draft on Article 14 of the Massachusetts Declaration of Rights, which was partly derived from the

---

[2] Justice Brandeis' dissenting opinion was later adopted in *Katz v. United States,* 389 U.S. 347 (1967), which overruled the *Olmstead* case.

Pennsylvania Constitution. In this way, James Madison and the constitutional Framers sought to do more than to just prohibit specific evils. They used general terms so that the Fourth Amendment would provide an enduring benefit by placing restrictions on future governmental conduct that were then unknown. This was acknowledged by Chief Justice Burger in his majority opinion in *United States v. Chadwick*,[3] 433 U.S. 1, 9 (1977) when he stated that "What we do know is that the Framers were men who focused on the wrongs of that day but who intended the Fourth Amendment to safeguard fundamental values which would far outlast the specific abuses which gave it birth." The Supreme Court has consistently rejected a literal construction of the Constitution in favor of one having regard to the principles upon which it was established. *United States v. Lefkowitz*, 285 U.S. 452, 467 (1932). Our Supreme Court has recognized that "If times have changed, reducing everyman's scope to do as he pleases in an urban and industrial world, the changes have made the values served by the Fourth Amendment more, not less, important. *Coolidge v. New Hampshire,* 403 U.S. 443, 455 (1971).

---

[3] Overruled on other grounds by *California v. Acevedo,* 500 U.S. 565 (1991).

## II.    The Seizure and the Search

In moving for summary judgment, defense counsel failed to allege that defendant Dunlap did not conduct a search nor did he argue that defendant Dunlap did not make a seizure. Rather, defense counsel cited a 9th Circuit case for the principle that service of civil process in a peaceful manner does not constitute a search or a seizure. *McCarthy v. County of Kootenai,* 2009 WL 3823106 (D. Idaho, Nov. 12, 2009), citing *United States v. Orlander,* 584 F.2d 876, 888 (9th Cir., 1978), reversed on other grounds. It should be noted that it is not the service of process that is the basis of the complaint in this case, but instead, it is the unlawful entry upon the plaintiffs' property, and the search that defendant Dunlap made looking for plaintiff Ellen Stone (A16), that is at the core of this action. Had defendants made a factual allegation that there was neither a search nor a seizure, plaintiffs' opposition would have provided greater details to demonstrate the factual inaccuracy of that claim. Rather than present facts to support an assertion that there was neither a seizure nor a search, defense counsel relied upon the "open fields" doctrine to support his argument that the defendants did not violate the Fourth Amendment by entering the plaintiffs' 75-acre property despite no trespassing and other signs having been posted, and a locked gate at the beginning of a driveway that was 0.3 miles long.

The Supreme Court has held that a seizure of property occurs when there is a meaningful interference with a person's possessory interests in that property, and a search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *United States v. Jacobsen,* 466 U.S. 109, 113 (1984). In the instant case the plaintiffs alleged, and the undisputed facts established, that there was both a seizure and a search.

There is no denial of the assertion that the plaintiffs had possession of their home and property when the defendant Dunlap disregarded posted signs, circumvented a locked gate, walked the entire length of the driveway (approximately 1600 feet) through dense woodlands that act as a natural wall blocking the view of the plaintiffs' home, garage and most of their property, and entered into the curtilage of the plaintiffs' home. A24-26. The unauthorized, and therefore unlawful, entry upon the plaintiffs' property interfered with the plaintiffs' exclusive possessory interests in their property and hence, constituted a seizure under the *Jacobsen* case. Entry involves the actual taking of lands or tenements by entering or setting foot on them. Webster's Third New International Dictionary (1986). Defendant Dunlap's unlawful entry onto the plaintiffs' land diminished the plaintiffs' possessory interest in the land and constituted a taking of the land and a seizure, just as it would for any other trespasser.

When defendant Dunlap went around the plaintiffs' locked gate and walked approximately 1600 feet along the driveway, he was conducting a search. Indeed, the Court below confirmed this fact by stating, "Defendant Dunlap indicated that he was looking for Ellen Stone . . . ." A33. The activity of looking thoroughly in order to find something or someone is the very definition of a search. See http://www.websters-online-dictionary.org;    Collins English Dictionary – Complete and Unabridged, 12th Ed., 2014.

In writing the Court's opinion in *United States v. Jones,* 565 U.S. 400 (2012), 404, Justice Scalia stated, "The Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a "search" within the meaning of the Fourth Amendment when it was adopted." *Id.,* at 404. Likewise, in the instant case, defendant Dunlap trespassed in an effort to obtain information concerning the whereabouts of Ellen Stone and to look for her. This, too, is a search within the meaning of the Fourth Amendment. Despite this well-settled case law, the Court below relied on a single case, *McAulay v. County of Washington,* 2014 WL 4058962 (D.Or., Aug. 15, 2014), which later was affirmed in an unpublished opinion issued in the context of a *pro se* appeal, *McAulay v. Garrett,* 666 Fed. Appx. 695 (9th Cir., 2016). Although the affirmance is not binding precedent for

this Court, and is not precedent in any other matter under Ninth Circuit Rule 36-3, it is a proverbial "elephant in the room" that needs to be addressed.

In affirming the *McAulay* decision, the Ninth Circuit relied upon a single Supreme Court case, *United States v. Jones, supra*. In citing the *Jones* case, the Ninth Circuit quoted from a footnote in Justice Scalia's opinion. In that footnote Justice Scalia stated that a seizure of property occurs not when there is a trespass, but when there is some meaningful interference with an individual's possessory interest in the property. That is precisely what happened in the instant case when defendant Dunlap infringed upon the plaintiffs' right of exclusive possession. In that same footnote, Justice Scalia also stated that a trespass alone does not qualify as a search, but there must also be an attempt to find something or to obtain information. In the instant case, there was an overt and explicit attempt to find plaintiff Ellen Stone or to obtain information concerning her whereabouts. A16. Moreover, as will be detailed below, there was a heightened search and seizure when defendant Dunlap entered upon the curtilage of the plaintiffs' home.

## III.    Defendants Violated Plaintiffs' Fourth Amendment Rights

Having established above that there was a seizure and a search, the next issue to be addressed is whether that conduct constituted a violation of the plaintiffs' Fourth Amendment rights. With respect to the seizure, *i.e.*, the entering

or setting foot upon the plaintiffs' land and the concomitant diminishment of the plaintiffs' exclusive right of possession, there is little that need be said. The seizure was unauthorized, warrantless and unreasonable. Hence, it violated the plaintiffs' rights under the Fourth Amendment.

With respect to the search, much can and should be said, starting with the principle that the Fourth Amendment protects people and their legitimate expectation of privacy. *Katz v. United States,* 389 U.S. 347 (1967). To establish that a search violated the Fourth Amendment, it is necessary that a person have both a subjective expectation of privacy and that the expectation is one that society is prepared to recognize as reasonable. *Oliver v. United States,* 466 U.S. 170 (1984).

A number of courts have held that an entry upon property, and the ensuing search or seizure, was illegal and a violation of the reasonable expectation of privacy based upon a no trespassing sign and there being a gate on the property. *Robinson v. State*, 164 So.3d 742 (Fla.2015); *State v. Christensen*, 131 Idaho 143, 953 P.2d 583 (1998); *Burkholder v. Superior Court*, 86 Cal. App.3d 421, 158 Cal. Rptr. 86 (1979); *State v. Bryant,* 183 Vt. 355, 950 A.2d 467 (20089); *State v. Brinks,* 87 Wash. App. 1021, 1997 WL 469864 (Wash. Ct. App, Aug. 18,

1997).[4] The instant plaintiffs' rural property was posted with no trespassing, no hunting, beware of dog, and keep out signs, had a closed and locked gate across the driveway, and dense woodlands that effectively enclosed the property as would a wall. A24-26. It should be noted that the "open fields" doctrine, established in *Hester v. United States,* 265 U.S. 57 (1924), is inapplicable since defendant Dunlap did not see any fields until after he walked down the lengthy driveway. A26-27. The plaintiffs' substantial effort to, at times, maintain the privacy of their home and property has been largely successful. No uninvited person has ever entered the plaintiffs' property when the gate was closed and locked, other than defendant Dunlap and on one occasion, a drunken neighbor. A27-28. Not a single girl scout, mail carrier, census taker, trick-or-treater, delivery person, salesman, Jehovah's Witness, client, political campaigner, someone seeking a charitable donation nor anyone else has done what defendant Dunlap did, except once when a neighbor was intoxicated. Under the facts of this case, involving multiple signs intended to exclude the public from the plaintiffs' home and property, a closed and locked gate, and the dense woodlands that act as a natural barrier or wall, the plaintiffs' expectation of privacy is one that society

---

[4] Some courts do not require that there be a gate and instead, find there was a reasonable expectation of privacy based solely upon a no trespassing sign. See *People v. Scott*, 79 N.Y.2d 474, 583 N.Y.S.2d 920 (1990).

has recognized, and it is entirely reasonable for society to have so recognized it.[5] Using the standard announced by then Circuit Judge Samuel Alito, this Court should balance the plaintiffs' legitimate privacy expectations against the special needs (if any) of the Sheriff. *Bolden v. Southeastern Pa. Transp. Auth.,* 953 F.2d 807, 822 (3ʳᵈ Cir., 1991).

By recognizing the legitimate expectation of privacy under the facts of this case, this Court may lessen the likelihood of a dangerous situation. For example, the summary judgment motion of these defendants relied on *McCarthy v. Kootenai County, supra,* where a deputy sheriff went around a closed gate and entered on posted property in an effort to serve civil process. There the deputy walked approximately 200 yards through an open field towards the residence, but as he approached the house, two dogs barked, growled and charged the deputy, who shot one of the dogs in the head. One must wonder what that plaintiff was required to do to keep the public (including a deputy) off his private property, so that a would-be intruder and the dogs are safe.

---

[5] In making the summary judgment motion, defense counsel repeatedly mentioned that plaintiff Brian Stone maintained a law office above a garage at his home, as if that meant that the plaintiffs' property could not, on occasion, be closed. The plaintiffs submit that the law office operation can be closed, and the public excluded from their property, as the plaintiffs deem appropriate. The protection afforded by the Fourth Amendment is not waived because a business is sometimes conducted at one's residence.

In a matter that does not involve exigent circumstances, such as the service of civil process, it would seem that if a deputy can disregard numerous posted signs, then the deputy can also disregard a property owner's verbal instruction to leave. Both the signs and the oral instruction are either valid or meaningless. In the event that there is an encounter between a deputy insisting upon entering on private property and an owner resolute in protecting his privacy rights, there may be tragic results if the law does not protect the owner's legitimate expectation of privacy, even though there is public recognition of privacy as noted above by the public's compliance with the posted signs when there is a closed and locked gate.

Even if this Court rejects all of the above argument, the plaintiffs submit that there remains one clear basis to reverse the granting of summary judgment. After defendant Dunlap disregarded the numerous signs that were designed to keep the plaintiffs' home and property private, after he circumvented the closed and locked gate, and after he walked three-tenths of a mile along the driveway toward that home which was not visible through the thick woods, defendant Dunlap finally entered upon the curtilage of the home without any authority to do so. A27-28. Since the founding of our Republic, there has been an overriding respect for the sanctity of the home (*Payton v. New York*, 445 U.S. 573 [1980]), which extends to its curtilage. *Oliver v. United States, supra*, at 178; *United States v. Dunn*, 480 U.S. 294 (1987); *Florida v. Jardines,* 569 U.S. 1 (2013).

The *Dunn* case enumerated four factors to consider in determining whether an area near a home is part of its curtilage, and hence, should be treated as the home itself. Pursuant to the *Dunn* case, a court should consider (1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is enclosed, (3) the nature of uses to which the area is put, and (4) the steps taken to protect the area from people passing by. Although the Memorandum decision that is being appealed did not even mention a home's curtilage, an application of the facts to the *Dunn* four-factor analysis supports the conclusion that defendant Dunlap unlawfully entered the curtilage of the plaintiffs' home.

Proximity: The undisputed facts establish that defendant Dunlap walked 0.3 miles along a curvy driveway that ran through dense woodlands before he reached the lawn in front of the plaintiffs' home, and that he went within 70 feet of the home, near the garage, when he served process. A24-27. 70 feet is a relatively short distance considering the size of the plaintiffs' property.[6]

Enclosure: The dense woodlands on the plaintiffs' property is a natural barrier akin to a wall that blocks the view of their home and most of their property from the public road or from the boundary lines. A24-26.

---

[6] Plaintiffs' Statement of Facts asserts that defendant Dunlap entered into the curtilage of the plaintiffs' home and provides detailed facts in support of that statement, none of which were disputed.

Usage:   The record is silent concerning the usage of the area that is denominated as the curtilage.

Steps Taken:  Although no action is needed to maintain the privacy of the curtilage from people passing by since the area was not visible, substantial efforts were made by plaintiffs to preserve their privacy, including the installation of a gate across the driveway that was closed and locked and the posting of numerous signs to keep the public away from their home and off of their property.  A27.  It is submitted that the facts support the conclusion that defendant Dunlap entered the curtilage of the plaintiffs' home, which assertion was not disputed by the defendants in their motion for summary judgment.  *United States v. Depew,* 8 F.3d 1424 (9th Cir. 1993).  For approximately 1600 feet the driveway defendant Dunlap used wound through dense woods, and then finally continued through the front lawn of the home to the nearby home and garage.  The relatively small grassy area or yard between the woods and the front of the plaintiffs' home, which the driveway crossed, is the home's courtyard or curtilage that the Fourth Amendment is designed to protect.

## IV.   Defendants Do Not Have Qualified Immunity

The defendants' summary judgment motion asserted, in the alternative, that defendants are shielded from suit if their conduct did not violate a clearly

established statutory or constitutional right of which a reasonable person would have known. There is a two-prong test to determine whether an official has immunity, which is (1) whether there was a violation of law, and (2) whether a plaintiff's right was clearly established. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz,* 533 U.S. 194 (2001).

It is submitted that Point III of this brief, above, establishes a violation of the plaintiffs' Fourth Amendment rights. Moreover, it is submitted that the defendants' conduct also constituted a violation of the plaintiffs' rights under the second, third, and fourth causes of action, those being violations of the plaintiffs' rights under the Pennsylvania Constitution, the common law right of privacy, and the trespass laws of Pennsylvania, respectively. The defendants' summary judgment motion papers did not dispute that there were violations of these "other" rights of the plaintiffs.

Once defendant Dunlap disregarded the no trespassing signs and walked around the locked gate through the natural barrier of dense woodlands, he violated the common law right of privacy and the trespass law. There is no statutory exception given to a sheriff or deputy sheriff for such conduct.[7] Hence,

---

[7] For example, 34 Pa. C. S. § 901(a)(2) authorizes wildlife conservation officers to go upon any land or water outside of buildings, except curtilage, posted or otherwise, in the performance of the officer's duty. (Emphasis added.) Sheriffs and their deputies are not given the same authority.

21

these rights were clearly established. The only thing that the defendants'
motion mentions about the violation of the Pennsylvania Constitution is that
there is no private cause of action for monetary damages, a subject that is
addressed below. The defendants' motion does not assert that there was no
violation of Article I, Section 8 of the Pennsylvania Constitution. Nor is there a
claim that the plaintiffs' rights thereunder were not clearly established and
violated.

## V.    Sheriff Martin is Sued Based Upon the Policies of His Office

Defense counsel's summary judgment motion asserts that the doctrine of
*respondeat superior* is not a proper basis to name a defendant in a civil rights
action. The instant action is not brought against defendant Martin based on that
theory. Rather, it is based upon the policies and customs of his office. Both
defendants asserted a right to disregard posted signs and to go around locked
gates in connection with the service of civil process. A26-27. In this regard,
defendant Martin was not being sued for the unlawful and tortious conduct of a
subordinate. Instead, he was named as a defendant because of the policy and
custom he has created and/or allowed in having deputy sheriffs engage in such
wrongful conduct. Having established that policy or permitted that custom to

occur, he is properly included in the instant action. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

## VI.  Pennsylvania Constitutional Claims

In his summary judgment motion, defense counsel stated that the Pennsylvania Supreme Court has not yet determined whether a private cause of action for monetary damages is recognized under the Pennsylvania Constitution, but the Commonwealth Court in *Jones v. City of Philadelphia*, 890 A.2d 1188 (2006), has held that money damages in an excessive force case are not available under Article I, Section 8 of the Pennsylvania Constitution.   It is submitted that the policy reasons that led to the denial of monetary awards in that case do not apply to a privacy invasion case, and that an award here is both appropriate and available.  In reaching that conclusion, it is helpful to start by looking at the Pennsylvania Constitution, and noting how it differs from the Fourth Amendment.

> "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pa. Const. Art. I, § 8.

Although both constitutions seek to protect the people from unreasonable searches and seizures, article I, § 8 specifies that the people are to be secure in their persons, houses, papers and possessions, while the Fourth Amendment states the people are to be secure in their persons, houses, papers and effects. The difference here is that one's "possessions" would include real property while one's "effects" usually refers to personal property. Clearly the drafters of article I, § 8 sought to protect a person's property rights, both real and personal, from unreasonable search and seizure. The prohibited entry upon a person's private property is a seizure of that property and violates an owner's right of exclusive possession.

Both constitutional provisions seek to protect the people's right of privacy. Nonetheless, the enhanced privacy protections of article I, § 8, when compared to the Fourth Amendment, are well established. *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). As a result, many cases have held that the privacy rights under article I, § 8 are greater than that of the Fourth Amendment. *Ibid.; Commonwealth v. De John*, 486 Pa. 32, 403 A.2d 1283 (1979), cert. denied, 444 U.S. 1032; *Commonwealth v. Gindlesperger*, 560 Pa. 222, 743 A.2d 898 (1999); *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996). It is this enhanced right of privacy that is constitutionally protected under article I, § 8. That provision does not seek to protect the people from

24

excessive force, which was the subject of the *Jones* case. Indeed, excessive

force is not mentioned in the Pennsylvania Constitution.

The Commonwealth Court in *Jones* set forth several factors in reaching its

decision not to create a private right of action for a plaintiff who claimed to have

been subjected to excessive force when being arrested, which is not a violation

of article I, § 8. An important factor there was whether there is an alternative

remedy, which it found in §1983. Since the privacy rights under article I, § 8

are often greater than those found in the Fourth Amendment, and the instant

action is based upon an invasion of plaintiffs' privacy, it is substantially

different from the circumstances the *Jones* Court confronted. Further, if the

violation of plaintiffs' rights were not clearly established, as defense counsel

claims, there is no remedy under §1983. Yet there could be a remedy under

article I, § 8. The open courts provision of the Pennsylvania Constitution, article

I, § 11, provides as follows:

> "All courts shall be open; and every man for an injury done him in
> his **lands,** goods, person or reputation shall have remedy by due course of
> law, and right and justice administered without sale, denial or delay. Suits
> may be brought against the Commonwealth in such manner, in such
> courts and in such cases as the Legislature may by law direct."
> [Emphasis added.]

This constitutional provision specifically provides for plaintiffs to have a

remedy for injury done to them in their lands, which would include the unlawful

entry thereon. Since the elements plaintiffs need to prove in a §1983 action

25

would differ from the elements for an injury to plaintiffs lands, defendants' request for summary judgment on the Pennsylvania constitutional claim should be denied.

## VII.  Plaintiffs' State Claims Are Not Barred

Defendants' summary judgment motion asserted that if the plaintiffs seek to sue the defendants for claims based on negligence or under Pennsylvania state law, the claims are barred by the provisions of the Political Subdivision Tort Claims Act ("PSTCA").  42 Pa. C. S. §8541 provides immunity to local agencies, subject to certain exceptions set forth in §§ 8542 and 8550.  Moreover, an individual employee is granted the same immunity as the agency.  42 Pa. C. S. §8545.

This immunity only covers claims sounding in negligence.  *Coffman v. Wilson Police Department*, 739 F. Supp. 257, 266 (E.D. Pa., 1990).  Intentional tort claims and claims based on violations of the Pennsylvania Constitution are not barred.  *Ibid*.  The state claims in the instant case are not based on negligence.  The conduct that is the basis of this suit was intentional and willful. Under these circumstances, the protection that is given to an agency and its employees for negligent conduct under the PSTCA is not available and does not apply.

26

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that this Court should reverse the order that is appealed, award plaintiffs-appellants costs and disbursements, and grant such other, further and different relief as the Court deems just, fair and equitable.

Dated:     Tilghman, Maryland
          May 12, 2017

Respectfully submitted,

*Brian J. Stone* /s/

Brian J. Stone
Plaintiff *Pro Se*
PA Attorney ID No. 313341
21509 Island Club Road
Tilghman, MD 21671
Phone: 570-517-9097
Email: brian@brianstonelaw.com

*Ellen A. Stone* /s/

Ellen A. Stone
Plaintiff *Pro Se*
21509 Island Club Road
Tilghman, MD 21671

## Certificate of Compliance

The undersigned hereby certifies

1.      That this brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the brief contains 6132 words;

2.      That this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 10 in Times New Roman with a size 14 font;

3.      That the text of the electronic brief is identical to the text in the paper copies; and

4.      That a virus detection program, Windows Defector, has been run on the file and no virus was detected.

*Brian J. Stone /s/*

Brian J. Stone

Plaintiff *Pro Se*

Dated:  May 12, 2017

## Certificate of Service

The undersigned hereby certifies that on this date, service was made on

Newman Williams, P.C., attorneys for defendants-appellees, a Filing User,

which service was done electronically by the Notice of Docket Activity.

*Brian J. Stone /s/*

Brian J. Stone

Plaintiff *Pro Se*

Dated: May 12, 2017

29