UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

**Docket No.: 17-1150**

BRIAN J. STONE and ELLEN A. STONE,

*Appellants*

v.

TODD A. MARTIN and JASON DUNLAP,

*Appellees*

**Brief for the Appellees, Todd A. Martin and Jason Dunlap**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
AT DOCKET NO. 3:15-CV-01632

Gerard J. Geiger, Esq.
Attorney For Appellees
Newman, Williams, Mishkin,
Corveleyn, Wolfe & Fareri, P.C.
712 Monroe Street
Stroudsburg, PA 18360
570-421-9090
570-424-9739 (fax)
ggeiger@newmanwilliams.com

# Table of Contents

Table of Contents ..................................................................... i

Table of Citations ...........................................................…..... ii

I.   Counterstatement of the Issues Presented for Review...................... 1

II. Concise Counterstatement of the Case ............................................. 2

III. Counterstatement of the Facts …....................................................... 4

IV. Counterstatement of the Standard of Review …........................... 7

V.  Summary of the Argument …................................................... 7

VI. Argument …................................................................................ 9

   A. The Stones' Fourth Amendment Claim Based on
     Trespass…................................................................................9

   B. Qualified Immunity Defense ..…................................................17

   C. District Court's Decision to Decline State Law Claims .............18

   D. Pennsylvania Constitutional Claims…....................................19

   E. PA State Law Claims Barred by Political Subdivision
     Tort Claims Act…............................................................…..21

VII. Conclusion …..................................................................…22

VIII. Combined Certifications …...................................................…23

# Table of Citations

## Federal Cases

*Bank of Am., N.A. v. Westheimer*, No. Nos. 14-4765 & 15-3562, 2017 U.S. App. LEXIS 4868 (3d Cir. Mar. 20, 2017) ...................................... 7

*Bodnar v. Wagner*, 2010 WL 56097 (M.D. Pa. Jan. 5, 2010) ............... 20

*Florida v. Jardines*, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) ........... 10

*Guarrasi v. County of Bucks*, CIV.A. 10-1879, 2011 WL 1226118 (E.D. Pa. Mar. 29, 2011) ................................................................................. 20

*Jones v. City of Philadelphia,* 890 A.2d 1188 (Pa. Cmwlth. Ct. 2006) . 19

*Marinkovic v. Mercer County Tax Claim Bureau*, No. 2:16-cv-292, 2017 U.S. Dist. LEXIS 44048 (W.D. Pa. Mar. 27, 2017) ............................... 18

*McAulay v. County of Wash.*, No. 3:13-CV-01611-PK, 2014 U.S. Dist. LEXIS 113518, at *9 (D. Or. Aug. 15, 2014), aff'd by *McAulay v. Garrett*, 666 F. App'x 695 (9th Cir. 2016), ........................................ 12, 13, 14, 15

*McCarthy v. Kootenai County*, No. CV08-294-N-EJL, 2009 WL 3823106 (D. Idaho Nov. 12, 2009) ................................................................. 15, 16

*Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ................................................................................................. 17

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ................................................................................................. 17

*Soldal v. Cook County*, 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) ........................................................................ 9

*Stockham Interests, LLC v. Borough of Morrisville*, 08-3431, 2008 WL 4889023, at *10 (E.D. Pa. Nov.12, 2008) ............................................... 20

*United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) ........................................................................ 9

*United States v. Hayes*, 551 F.3d 138 (2d Cir. 2008) ........................... 11

*United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) ....................... 11

*United States v. Jones*, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012) ..... 9, 10

*United States v. Olander*, 584 F.2d 876 (9th Cir. 1978) ....................... 16

*United States v. Traynor*, 990 F.2d 1153 (9th Cir. 1993) *overruled in part on other grounds* in *United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) ............................................................................. 11

*Wheeldin v. Wheeler*, 373 U.S. 647, 83 S. Ct. 1441, 10 L. Ed. 2d 605 (1963) ........................................................................ 10

**Federal Statutes**

42 U.S.C. § 1983 (2012) ................................................... 2, 12, 18, 19, 20

## Pennsylvania Statutes

42 Pa. C.S.§2921 ...................................................................... 17

## Other

Fed. R. Civ. P. 4(e)(2) ............................................................ 15

U.S. Const. amend. IV, § 1 ...................................................... 9

# I.    Counterstatement of the Issues Presented for Review

A.    **4th Amendment Claims:** Whether Deputy Sheriff Dunlap violated the Stones' Fourth Amendment rights by serving legal process on Mrs. Stone on a property posted with "no trespassing signs" and secured by a locked gate?

> Suggested answer: No. Even if Deputy Dunlap had trespassed on the Stones' land, merely serving process without searching their property does not violate the Fourth Amendment.

B.    **Qualified Immunity:** Whether Sheriff Martin and Deputy Dunlap have qualified immunity from suit where it is not clearly established that service of legal process on a property posted with no trespassing signs violates the Fourth Amendment?

> Suggested answer: Yes. There are no cases in this Circuit that hold that a process server violates the Fourth Amendment by serving process on property posted with no trespassing signs.

C.    **Pendent Jurisdiction:** Whether the District Court properly refused to exercise jurisdiction over the pendent state law claims?

> Suggested answer: Yes. The District Court had the discretion to refuse jurisdiction over the pendent state law claims.

D.    **PA Constitutional Claims:** Whether the Stones' stated a monetary claim for violation of rights protected by the Pennsylvania Constitution?

> Suggested answer: No. There is no state law equivalent of Section 1983 and the courts that have decided this issue, including the Pennsylvania Commonwealth Court, have ruled that there is no monetary claim.

E.    **PSTCA Immunity**: Whether the defendants have immunity under Pennsylvania's Political Subdivision Tort Claims Act for the claims based on Pennsylvania state law?

> Suggested answer: Yes. Since there is no law forbidding service in the manner performed by the defendants, the willful misconduct exception to tort immunity does not apply.

## II.    Concise Counterstatement of the Case

Martin and Dunlap never filed an answer to the complaint because the District Court never ruled on the Rule 12(b) (6) motion to dismiss (Doc. 6) they filed on October 23, 2015.

Defendants moved for summary judgment on June 30, 2016 because the summary judgment deadline expired on July 1, 2016 (Doc. 15) and they wanted to protect their right to file for summary judgment.

In light of the summary judgment motion, the District Court decided that their Rule 12(b) (6) motion was moot and addressed the summary judgment motion in defendants' favor.

The District Court ruled that the Stones failed to state a Fourth Amendment claim and dismissed all federal causes of action.

The Court declined to exercise jurisdiction over the remaining claims based on Pennsylvania state law and dismissed those without prejudice. The Stones have since raised those state claims in a new lawsuit filed in the Court of Common Pleas of Monroe County on May 26, 2017 to docket number 3817 Civil 2017.

## III.   Counterstatement of the Facts

Brian Stone is a licensed Pennsylvania attorney. He maintains his Monroe County, Pennsylvania law office in a converted garage adjacent to his home in Monroe County, where he lives with his wife, Ellen. The defendants included photos of the Stones' property in their statement of undisputed material facts.

The Stones property is on Route 115 in Tobyhanna Township. Attorney Stone has his law office sign at the head of the driveway on Route 115. App. pp. 8-9. The driveway has a metal gate just past the law office sign. App. p. 9.

The Stones posted a number of signs on trees along the driveway leading to their house, reading "Beware of Dog", "No Hunting", "Speed Limit 15", "Posted - Private Property - Hunting, Fishing, Trapping or Trespassing for Any Purpose is Strictly Forbidden - Violators will be Prosecuted", and "Keep Out". These signs are posted even when Mr. Stone's law office is open for business. App. pp. 9-12.

The converted garage is posted with signs reflecting it to be the law office of Attorney Brian Stone. A sign on the door provides a contact phone number and website address for Attorney Stone.

Latese T. Smith, a plaintiff in a lawsuit filed against Mrs. Stone in
Rhode Island, asked the Monroe County Sheriff's Office to serve
documents upon Mrs. Stone relating to his lawsuit against her. App. p.
14.

On June 8, 2015 and on June 11, 2015, Deputy Dunlap went to
the Stones property to serve the civil process but found the gate locked.
App. p. 16. On those occasions, Deputy Dunlap placed his card in the
Stones' mailbox and left the property. App. p. 16. The Stones never
called the Sheriff's office in response to those cards.

On June 17, 2015, Deputy Dunlap went to the property a third
time and, once again, found the gate closed and locked. This time, he
walked around the gate and down the Stones' driveway. When he
reached the law office building, the garage door in the building was
open and Ellen Stone was visible from the open door. Defendant Dunlap
said he was looking for Ellen Stone. She replied, "You found me." App.
p. 16.Defendant Dunlap gave the Rhode Island paperwork to Mrs. Stone
and then left the property. App. p. 16.

Deputy Dunlap never went to the Stones' house and performed no
searches there. The Stones claim the deputy violated their Fourth

5

Amendment rights and their right to privacy because, when he handed the paperwork to Mrs. Stone, he was standing in the "curtilage" of their home.

The Stones concede that Sheriff Martin was not on their property but they claim Deputy Dunlap was acting in conformity with Sheriff Martin's policies.

Stone identified five "causes of action" as follows:

1. Invasion of privacy without due process of law;

2. Violation of Article I, Section 8, of the Pennsylvania Constitution;

3. Violation of the Pennsylvania common law right of privacy;

4. Violation the trespass laws of the Commonwealth of Pennsylvania; and

5. A claim for injunctive relief. Complaint, App. pp. 3-7.

The Stones sought money damages in the form of compensatory damages, punitive damages, and attorneys' fees. App. p.5. They also sought injunctive relief prohibiting the Monroe County Sheriff's Office from "disregarding posted signs when civil process is attempted to be served in Monroe County, Pennsylvania." App. p.5.

## IV.    Counterstatement of the Standard of Review

This court's review of the dismissal of the Stones' claims and the granting of summary judgment for the defendants is plenary. The Court is to construe all facts and draw all reasonable inferences in favor of the Stones as the non-moving parties. *Bank of Am., N.A. v. Westheimer*, Nos. 14-4765, 15-3562, 2017 U.S. App. LEXIS 4868, at *7 n.9 (3d Cir. Mar. 20, 2017).

## V.    Summary of the Argument

The Stones sued the Sheriff and his deputy for violating their right to live on their property privately. They did this despite conflicting messages to the public. On one hand, they posted their property with signage for Attorney Stone's law office. On the other hand, they posted "no trespassing" signs telling the public they were not welcome and they should be aware of dogs.

Speed limit signs restricted those who did come on the property and all signs remain posted regardless of whether the gate was open. Meanwhile, despite cards in the Stone's mailbox requesting that Ellen contact the Sheriff, she ignored them. When Deputy Dunlap walked

down the driveway, Ellen's comment was "You found me," suggesting she was evading service of process.

Although the Stones claimed Deputy Dunlap trespassed on their property by ignoring the conflicting signs, there is a difference between trespassing on a property and violating owners' Fourth Amendment rights by searching it.

There are no cases in the Third Circuit that we are aware of that say that trespassing on private property to hand the owner civil process violates the Fourth Amendment.

As the District Court ruled, a simple trespass on land is not a Fourth Amendment violation unless there is a search. Other District Courts agreed and we cited those decisions. No courts have ruled this is a constitutional violation.

There is no dispute that the Third Circuit has not previously decided this issue. Because it is not clearly established that serving process on property posted with no trespassing signs violates the Fourth Amendment, the defendants have qualified immunity from suit.

Finally, the District Court properly declined to exercise jurisdiction over the pendent claims based on state law.

## VI.   Argument

### A.   Stones' Fourth Amendment Claim Based on Trespass

The Fourth Amendment provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const, amend. IV, § 1. "[T]he first Clause of the Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 63, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992), *quoting United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).

The Stones do not claim that Deputy Dunlap seized Mrs. Stone or any of the Stones' property. Therefore, the only issue before the court is whether Deputy Dunlap performed a search within the meaning of the Fourth Amendment by trespassing onto the Stones' property to serve legal process on Ellen Stone.

"Trespass alone does not qualify [as a search, rather it] must be conjoined with . . . an attempt to find something or obtain information." *United States v. Jones*, 132 S. Ct. 945, 951 n.5, 181 L. Ed. 2d 911 (2012). Accordingly, "[w]hen 'the Government obtains information by physically

intruding' on persons, houses, papers, or effects, 'a search within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *Florida v. Jardines*, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013), *quoting Jones*, 132 S. Ct. at 950-951.

It follows, however, that a law enforcement officer has not conducted a search, for purposes of the Fourth Amendment, when he trespasses onto private property but does not attempt to obtain information there. *See Jones*, 132 S. Ct. at 951; *Jardines*, 133 S. Ct. at 1414. There must be conjoined with the search "an attempt to find something or obtain information." *Jones* at 920, n. 5 (S Ct 2012). As a result, the decision in *Wheeldin et.al. v. Wheeler,* 373 U.S. 647, 83 S Ct 1441, 10 L Ed 2d 605 (1963), refusing to extend the protections of the Fourth Amendment to service of a subpoena where there is no criminal search involved and the person is neither arrested nor detained, is still good law.

### *Curtilage Question Irrelevant*

The Stones place great emphasis on their claim that the Fourth Amendment was implicated because Deputy Dunlap stepped within the

"curtilage" to their home. They cite historic decisions going back to 17th century England on the right of privacy in one's home.

The District Court did not address whether it agreed with the Stones that the law office building was within the curtilage of their home. That question is, frankly, irrelevant to this appeal because it does not change the outcome. Even if Deputy Stone served Ellen Stone within the curtilage, the Stones' have no Fourth Amendment claim because the Deputy did not perform a search there.

Other circuit courts of appeals have held that trespass alone is not enough to state a Fourth Amendment claim even if it extends to areas within the curtilage if no search occurs in that area. See e.g. *United States v. Traynor*, 990 F.2d 1153 (1993) *overruled in part on other grounds* in *United States v. Johnson*, 256 F.3d 895 (9th Cir 2001) ("Under *Dunn* and *Pace,* it does not matter that officers first trespass upon property that is obviously curtilage (the fence behind the house in *Dunn*; the front door and window in *Pace*) while investigating a tip, as long as the incriminating observations themselves take place outside the protected curtilage."); *United States v. Hayes*, 551 F.3d 138, 147 (2d Cir. 2008).

Deputy Dunlap was not on the Stones' property to collect information in pursuit of an investigation. Mrs. Stone was neither arrested nor detained when the deputy gave her legal paperwork from Rhode Island. As the District Court noted, it is fundamental that there must be a search in order for there to be a Fourth Amendment violation and there was none in this case.[1]  Lower court opinion, at p. xx (App. xx).

The District Court noted that the Third Circuit has not previously ruled on whether a trespass is a Fourth Amendment violation compensable under Section 1983. App. p. 35. However, it found a case from a District Court in Oregon with very similar facts, which concluded there was no Section 1983 claim.

In *McAulay v. County of Wash.*, No. 3:13-CV-01611-PK, 2014 U.S. Dist. LEXIS 113518, at *9 (D. Or. Aug. 15, 2014), aff'd by *McAulay v. Garrett*, 666 F. App'x 695 (9th Cir. 2016), this was the issue as framed by the District Court:

> "The question before the court is whether it is a violation of the Fourth or Fourteenth Amendment for two sheriff's

---

[1] The District Court said: "Whether or not defendant Dunlop trespassed on the plaintiffs' property, a search within the meaning of the Fourth Amendment did not occur." App. p. 39.

> deputies, in a non-emergency situation, to ignore a "no
> trespassing" sign and gain entry onto private property by
> walking around a locked gate for the purpose of serving a
> civil summons."

*McAulay v. County of Wash.*, No. 3:13-CV-01611-PK, 2014 U.S.

Dist. LEXIS 113518, at *1 (D. Or. Aug. 15, 2014). We face that

identical issue in this case.

In *McAulay*, Deputy Vargas was dispatched to the McAulays'

home to serve a summons on Mr. McAulay. Because the McAulays'

home was located in a rural area and Vargas was told that Mr.

McAulay was not "cop friendly," Vargas requested backup. Deputy

Weston responded to Vargas's request and accompanied Vargas to the

McAulays' home. When the deputies arrived at the McAulays' property,

they found the front gate locked, blocking road access to the property,

and a no trespassing sign posted on the gate. The deputies could not see

the McAulays' residence from the gate. Vargas radioed dispatch,

requesting that dispatch phone the McAulays to inform them that the

deputies were at the entrance to their property and ask Mr. McAulay to

meet them there. Dispatch placed the phone call, but no one answered.

Vargas and Weston then elected to walk around the locked gate and

down the driveway to the McAulays' home. The deputies walked onto

the McAulay's porch and peered into the kitchen window. Ms. McAulay, who had just come out of the shower, was standing naked in the kitchen while drying her hair. The deputy saw Ms. McAulay then walked back to the corner of the porch and toward the front door. Before the deputies reached the door, Mr. McAulay came out and confronted the deputies, telling them, "[i]f you're going to wear the uniform, you should get a book on the law." Mr. McAulay's interaction with the deputies continued without further incident. The deputies provided Mr. McAulay with their business cards, served him with the summons, and left the property.

The Oregon District Court held that because the deputies were not there to obtain information but merely to serve papers, they did not perform a search under the Fourth Amendment. "To be a search, the deputies would have had to trespass onto the McAulays' property and have attempted to obtain information during this trespass. Vargas and Weston did not attempt to obtain any information while on the McAulays' property; therefore they did not conduct a Fourth Amendment search." *McAulay v. County of Wash.*, No. 3:13-CV-01611-PK, 2014 U.S. Dist. LEXIS 113518, at *12 (D. Or. Aug. 15, 2014). The

Oregon District Court also rejected the argument, as untenable, that by

asking a defendant to verify his identity, that this is the type of

information gathering that is a search under the Fourth Amendment:

> "[I]t is untenable to suggest that a run-of-the-mill service of
> process—where an officer simply verifies an individual's
> name and then serves the summons—constitutes a Fourth
> Amendment search, much less an unreasonable search. If
> that were prohibited by the Constitution, it would be
> effectively impossible to serve a civil summons by means of
> personal service because law enforcement officers would be
> prohibited from asking an individual to verify his or her
> own[*13] name for purposes of properly serving the
> summons. Personal service is permitted under federal and
> Oregon law, thus the actions necessary to complete personal
> service cannot constitute an unreasonable search. See Fed.
> R. Civ. P. 4(e)(2); ORCP 7(D)(2). Accordingly, the McAulays'
> Fourth Amendment rights were not infringed by Vargas and
> Weston's actions."

*McAulay v. County of Wash.*, No. 3:13-CV-01611-PK, 2014 U.S.

Dist. LEXIS 113518, at *12-13 (D. Or. Aug. 15, 2014).

A district court in Idaho reached a similar conclusion but

referenced the "open fields" doctrine rather than the Stones' curtilage

issue.

In *McCarthy v. Kootenai County*, No. CV08-294-N-EJL, 2009 WL

3823106, at *4-5 (D. Idaho Nov. 12, 2009), the plaintiffs argued that a

Sheriff's deputy was without authority to enter a property to serve

process since it was marked with a "No Trespassing" sign and the

Plaintiffs had an expectation of privacy on their property. The

defendants argued the "no trespassing" sign did not prevent the officer

from entering the property as the property around the residence was

subject to the "open fields" doctrine and Plaintiffs had no expectation of

privacy on the part of the property the deputy entered.

The District Court in that case specifically held that the officer

entering the property that was marked with a "No Trespassing" sign

did not violate the constitutional rights of the property owners because

he did not perform a search:

> "There is no violation of the Fourth Amendment when an
> officer comes upon private property to serve legal process, so
> long as there is no breaking or entering of a dwelling or other
> building of a type protected by the Amendment." *United
> States v. Orlander,* 584 F.2d 876, 888 (9th Cir.1978) (reversed
> on other grounds). Serving process in a peaceful manner is
> not a search or seizure. *Id."*

*McCarthy v. Kootenai County*, No. CV08-294-N-EJL, 2009 WL 3823106,

at *4-5 (D. Idaho Nov. 12, 2009).

These decisions reflect that there is a difference between walking

on private land, which may be a trespass, and unlawfully searching it in

violation of the Fourth Amendment.

## B.    Qualified Immunity Defense

The District Court did not address the defendants' qualified immunity defense because it found no constitutional violation. Should this Court rule otherwise, the defendants are immune from monetary claims under the qualified immunity doctrine.

The qualified immunity analysis has two prongs. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The first prong is whether the facts the plaintiff alleged shows the violation of a constitutional right. Id. The second prong is whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson*, 555 U.S. at 236.

Here, Sheriff Martin, personally or through a Deputy, such as Jason Dunlap, had a statutory duty to serve process upon the Stones. 42 Pa. C.S. § 2921.[2] Given the lack of Third Circuit precedent on this

---

"[2] **§2921. Powers and duties of the sheriff.**
The sheriff, either personally or by deputy, shall serve process and execute orders directed to him pursuant to law."

issue, and in light of cases from other Circuits which found no constitutional violation under similar circumstances, it was not clearly established that the defendants were violating the Stones' Fourth Amendment rights by serving process on property posted with "no trespassing" signs.

## C.    District Court's Decision to Decline State Law Claims

After concluding that the Stones failed to state a federal cause of action under Section 1983, it declined to exercise jurisdiction over the Stones' claims based on state law violations.

The Supreme Court has held that "a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity, which underlie the pendent jurisdiction doctrine. *Marinkovic v. Mercer County Tax Claim Bureau*, No. 2:16-cv-292, 2017 U.S. Dist. LEXIS 44048, at *10-11 (W.D. Pa. Mar. 27, 2017).

It was entirely appropriate for the Court to have declined jurisdiction of the pendent state law claims. In fact, the Stones have now filed a lawsuit in state court (Monroe County CCP) relating to these claims, which suggests that the Stones' pendent state law claims filed in federal court are now moot.

### D.     Pennsylvania Constitutional Claims

To the extent the Stones' claims under the Pennsylvania Constitution are still relevant, if the District Court had chosen to decide them, they would have properly been rejected. Pennsylvania has no statute equivalent to Section 1983 and the courts, which have addressed the issue, have ruled that monetary damages are not recognized for violations of Pennsylvania constitutional rights.

In *Jones v. City of Philadelphia*, the Pennsylvania Commonwealth Court held that a private cause of action for money damages based on Article I, § 8 of the Pennsylvania Constitution in an excessive force case was not recognized. 890 A.2d 1188, 1216 (Pa. Cmwlth. Ct. 2006).

Since *Jones*, federal courts addressing this issue have followed *Jones* and have held that no private cause of action exists under Article

I, Section 8.  Other courts have agreed and have decided that no cause of action exists under any section of the Pennsylvania Constitution, not just Article I, § 8. See e.g. *Stockham Interests, LLC v. Borough of Morrisville*, 08-3431, 2008 WL 4889023, at *10 (E.D. Pa. Nov.12, 2008) (holding, in broad terms, that there "is no private cause of action for damages arising from violations of the Pennsylvania Constitution"); *Bodnar v. Wagner*, 2010 WL 56097 (M.D. Pa. Jan. 5, 2010) (Caputo, J.) ("…other courts to consider this issue have uniformly held that the Pennsylvania Constitution does not create a private right of action."); Guarrasi v. County of Bucks, CIV.A. 10-1879, 2011 WL 1226118 (E.D. Pa. Mar. 29, 2011) (Yohn, J.) (No private right of action).

The reason for disallowing monetary claims is simple. Under 42 U.S.C. § 1983, Congress specifically provided a monetary remedy for violations of the U.S. Constitution. There is no §1983 equivalent in Pennsylvania law. Allowing a monetary remedy would be using the judiciary to enact laws, which is expressly reserved to the legislature.

The better forum for deciding such a claim of first impression is a state court in Pennsylvania rather than a federal court. For this reason, Judge Mannion properly declined to decide the pendant claims.

### E.     PA State Law Claims Barred by Political Subdivision Tort Claims Act

The Stones also sue defendants for violating Pennsylvania law in trespassing on their property. Defendants believe that the provisions of the Political Subdivision Tort Claims Act bar those claims.  Their allegations do not fit within any of the limited statutory exceptions in the Act. 42 Pa. C.S. § 8541. Although the Stones believe that immunity does not apply because the defendants acted intentionally, the facts do not support this claim. As we noted in the sections relating to the Fourth Amendment claims, there are courts that have held that service in the manner performed by Deputy Dunlap did not violate plaintiff's constitutional rights. Thus, the intentional misconduct exception does not apply.

Again, these are issues best decided by the Pennsylvania courts and these claims are now pending in the Monroe County Court of Common Pleas.

## VII.  Conclusion

Appellees Martin and Dunlap ask this court to affirm the opinion and order of the District Court dated December 22, 2017, which granted summary judgment for the defendants and against the plaintiffs.

NEWMAN WILLIAMS

By: s/ Gerard J. Geiger, Esq.
Attorney I.D. No. PA 44099

Date: June 8, 2017

## VIII.    Combined Certifications

I hereby certify the following:

1.    That I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

2.    That the foregoing is the Principal Brief of the appellees, Todd Martin and Jason Dunlap, and that the principal body of the brief consists of 4,683 words as determined by the Word Count feature of Microsoft Word 2010. This is within the 14,000-word limit established by local rules of court.

3.    That on this date, I filed an identical electronic version of this brief in PDF format with the court.

4.    That I simultaneously served on Brian and Ellen Stone an electronic version of this brief via ECF and by email and will serve a hard copy on them within five days.

5.    That prior to emailing the electronic version of this brief to the court, I performed a virus check of the electronic brief using the following software: Trend Micro Worry-Free Business Security version 17.0.2316, and that the check revealed that the electronic version of this brief was free of viruses.

**NEWMAN WILLIAMS**

By: s/ Gerard J. Geiger, Esq.
Attorney I.D. No. PA 44099

Date: June 8, 2017